Case. No.  15-16682

UNITED STATES COURT OF APPEALS

NINTH CIRCUIT

---

CONTEST PROMOTIONS, LLC

*Plaintiff-Appellant*

vs.

CITY AND COUNTY OF SAN FRANCISCO

*Defendant-Appellee*

---

Appeal from a Judgment of the United States District Court for the Northern
District of California, The Hon. Susan Illston

---

**APPELLANT'S REPLY BRIEF**

---

Michael F. Wright (SBN 89910)
10100 Santa Monica Blvd. 23rd Floor
Los Angeles, California 90067
Tel. (310) 712-6195
Fax (310) 712-6199
mfwrightlaw@gmail.com
Counsel for Plaintiff-Appellant
Contest Promotions, LLC

**TABLE OF CONTENTS**

I.    INTRODUCTION. ................................................................................1

II.   PLAINTIFF'S SIGNS ARE ONSITE SIGNS. ...............................3

     A.    Plaintiff Alleges, and the City Admits, that Plaintiff's Signs
          Advertise Onsite Activities. ................................................3

     B.    The Settlement Agreement Estops the City from Denying that
          Plaintiff's Signs Are Onsite Signs........................................6

III.  SECTION 602.3 IS SUBJECT TO HEIGHTENED OR STRICT
     SCRUTINY. ....................................................................................7

     A.    On Its Face, Section 602.3 Restricts Speech Based on the
          Topic, Idea or Message Expressed.......................................7

     B.    The Onsite-Offsite Distinction is Content-Based. ...............9

     C.    Section 602.3 is Outside the Scope of *Central Hudson*.....................15

     D.    The Applicable Test Is Strict Scrutiny. ...............................17

IV.  SECTION 602.3 FAILS INTERMEDIATE OR ANY FORM OF
     HEIGHTENED SCRUTINY............................................................23

V.   SECTION 602.3 IS VOID FOR VAGUENESS. ...........................25

     A.    Plaintiff Has Standing to Assert Vagueness. ......................25

     B.    Section 102's Definition of "Use" Does Not Cure the
          Vagueness of Section 602.3. ...............................................26

VI.  SECTION 602.3 VIOLATES EQUAL PROTECTION. .............................28

     A.    Section 602.3 Is Subject to Strict Scrutiny Because It Implicates
          Free Speech. .......................................................................28

     B.    Plaintiff Has Not Waived Its Class of One Argument.......................28

VII. PLAINTIFF ALLEGES A VIOLATION OF SUBSTANTIVE DUE
     PROCESS..........................................................................................29

VIII. CONCLUSION...............................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*44 Liquormart, Inc. v. Rhode Island*
    517 U.S. 484 (1996)........................................................16

*California Outdoor Equity Partners v. City of Corona*
    2015 WL 4163346 (C.D. Cal. 2015) ...............................19

*Central Hudson Gas & Electric Corp. v. Public Service Comm.*
    447 U.S. 557 (1980).................................................*passim*

*City of Cincinnati v. Discovery Network, Inc*
    507 U.S. 410 (1993).................................................*passim*

*Coyote Publishing, Inc. v. Miller*
    598 F.3d 592 (9th Cir. 2010) ...........................................11

*Dana's R.R. Supply v. Attorney General of Florida*
    807 F.3d 1235 (11th Cir. 2015) .......................................20

*Denney v. DEA*
    508 F.Supp.2d 815 (E.D. Cal. 2007) ...............................28

*Duffy v. Riveland*
    98 F.3d 447 (9th Cir. 1996) .............................................27

*Flex-Foot, Inc. v. CRP, Inc.*
    238 F.3d 1362 (Fed. Cir. 2001) .........................................7

*Free Speech Coalition, Inc. v. Attorney General*
    ___ F.3d ___, 2016 WL 3191474 (3rd Cir. 2016).....................21, 22

*Gieg v. DDR, Inc.*
    407 F.3d 1038 (9th Cir. 2005) .........................................27

*In re Grand Jury Proceedings*
    5 F.3d 397 (9th Cir. 1993) ...............................................14

*In re Grand Jury Subpoena*
    438 F.3d at 1141 (D.C. Cir. 2006)....................................13

*B.H. ex rel. Hawk v. Easton Area Sch. Dist.*
  725 F.3d 293 (3d Cir. 2013) ...............................................................13

*AE ex rel. Hernandez v. City. of Tulare*
  666 F.3d 631 (9th Cir. 2012) ...............................................................4

*Hunt v. City of Los Angeles*
  638 F.3d 703 (9th Cir. 2011) ..............................................................25

*Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*
  589 F.3d 1027 (9th Cir. 2009) ...........................................................14

*Lamar Central Outdoor, LLC v. City of Los Angeles*
  245 Cal.App.4th 610 (2016) ...............................................................19

*Left Field Media LLC v. City of Chicago*
  ___ F.3d ___, 2016 WL 2956879 (7th Cir. May 23, 2016) ........................20, 22

*Marks v. U.S.*
  430 U.S. 188 (1977).......................................................................11, 14

*McKoy v. North Carolina*
  494 U.S. 433 (1990).............................................................................14

*Metro Lights L.L.C. v. City of Los Angeles*
  551 F.3d 898 (9th Cir. 2009) ........................................................11, 12

*Metromedia, Inc. v. City of San Diego*
  453 U.S. 490 (1981).......................................................................*passim*

*Norton v. Springfield*,
  806 F.3d 411 (7th Cir. 2015)) .............................................................21

*Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204*
  523 F.3d 668 (7th Cir. 2008) ..............................................................13

*Police Dept. of Chicago v. Mosley*
  408 U.S. 92 (1972)...............................................................................28

*Reed v. Town of Gilbert, Arizona*
  135 S.Ct. 2218 (2015).....................................................................*passim*

*Retail Digital Network, LLC v. Appelsmith*
  810 F.3d 638 (9th Cir. 2016) .......................................................................*passim*

*Sorrell v. IMS Health, Inc.*
  564 U.S. 552 (2011)........................................................................................*passim*

*Thomas v. Schroer*,
  116 F. Supp. 3d 869 (W.D. Tenn. 2015) ..........................................................11

*Thomas v. Schroer*,
  127 F. Supp. 3d 864 (W.D. Tenn. 2015) ..........................................................13

*U.S. v. Playboy Entertainment Group, Inc.*
  529 U.S. 803 (2000).............................................................................................8

*Village of Willowbrook v. Olech*
  528 U.S. 562 (2000).........................................................................................29

## STATUTES

California Evidence Code
  § 622.....................................................................................................................7

San Francisco Planning Code
  § 102...............................................................................................................*passim*
  § 602.3............................................................................................................*passim*

## OTHER AUTHORITY

United States Constitution, First Amendment ..................................................*passim*

## I.  **INTRODUCTION.**

On its face, section 602.3 of the City Planning Code restricts the messages permitted on an onsite "business sign" based on their communicative content.  In *Retail Digital Network, LLC v. Appelsmith*, 810 F.3d 638 (9th Cir. 2016) ("*RDN*"), this Court held that under *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011), content-based restrictions on commercial speech are subject to heightened scrutiny.  *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015), raises the bar to strict scrutiny.

The City urges the Court to ignore recent precedent and follow pre-*Sorrell* decisions that upheld offsite commercial sign restrictions under an ultra-deferential version of *Central Hudson* scrutiny.  When those cases were decided, however, this Court applied intermediate scrutiny to commercial speech restrictions whether content-based or not.  As *RDN* recognizes, *Sorrell* changed the law and the test for content-based restrictions on commercial speech is now heightened scrutiny.

The district court upheld section 602.3 under *Central Hudson* as a ban on *offsite* signs.  But Plaintiff alleges and the City admits that Plaintiff's signs advertise activities, *i.e.* contests, conducted onsite and therefore are *onsite* signs.  Even if Plaintiff's signs are considered offsite signs, the very authority on which the City principally relies, the plurality opinion in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), found that the onsite-offsite distinction is content-

based. While that did not trigger heightened scrutiny under the law as it existed in 1981, under *Sorrell* and *RDN* it does now. *Reed* raises the test to strict scrutiny.

The district court and the City treat *Central Hudson*'s lenient standard as the universal test for all commercial speech regulations. The Court, however, has twice recognized that *Central Hudson*'s "special commercial speech inquiry" applies only where government seeks to protect against "commercial harms" such as fraud. Section 602.3 restricts commercial content in the interests of safety and aesthetics. It thus lies outside the scope of *Central Hudson*.

The district court held *Reed* inapplicable to commercial signs. Although it involved noncommercial speech, *Reed* is squarely based on *Sorrell* and *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) – both commercial speech cases. The Seventh and Third Circuits have recently recognized that *Reed* applies to commercial speech and a district court has applied it to billboards.

But whether the test is heightened, strict or even intermediate scrutiny, section 602.3 fails because its restrictions are irrelevant to safety and aesthetics. The City makes no attempt to justify section 602.3 in terms of those interests.

Section 602.3 limits the primary message permitted on a business sign to one that directs attention to the "use which occupies the greatest area on the premises." In its Opening Brief, Plaintiff shows that the terms "use," "area," and "premises" are unconstitutionally vague.

The City tries to rescue section 602.3, both in terms of free speech and vagueness, by raising a new argument for the first time on appeal. It says that section 102 of the Code defines the term "use" as used in section 602.3. Section 102 defines "use" in terms of the "purpose" for which a premises is occupied. The City argues that section 102 limits the primary message on business sign to one that advertises the whole enterprise, *e.g.* "Jim's Grocery Store."

Even if it applies here, section 102 makes no difference. With respect to the First Amendment, a message like "Jim's Grocery Store" is no different in terms of safety and aesthetics from Coca Cola, Kraft or any other message. As to vagueness, "purpose" of a business is just as vague as section 602.3's terms "area", "premises", and "use." In any event, section 102 does not apply here because it conflicts with the language of section 602.3.

Because Plaintiff states a valid First Amendment claim, it also states valid claims for violation of equal protection and substantive due process. The Court therefore should reverse the judgment below and remand with directions to apply strict, or at least heightened, scrutiny to section 602.3.

## II.     PLAINTIFF'S SIGNS ARE ONSITE SIGNS.

### A.     Plaintiff Alleges, and the City Admits, that Plaintiff's Signs Advertise Onsite Activities.

The City's main argument is that Plaintiff's signs are offsite signs (Answering Brief (AB) 2, 29-30), which the City says it may prohibit subject only

3

to deferential scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Comm.*, 447 U.S. 557, 566 (1980).  (AB 11-17, 22.)  The district court upheld section 602.3 as a "ban on off-site commercial speech."  (1 ER 7:6-8.)  Plaintiff's signs, however, are *onsite* signs because they advertise onsite activities.

On a motion to dismiss, the court accepts the allegations of the complaint as true and construes them in the light most favorable to the plaintiff.  *AE ex rel. Hernandez v. City. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).  In the First Amended Complaint (FAC), Plaintiff alleges that its signs advertise "contests in which individuals are invited to enter the premises of local businesses for the purpose of filling out applications and winning prizes."  (FAC ¶ 12, 1 ER 20.)  "[S]tores benefit by the increased store traffic, and general goodwill associated with the contests and prizes offered free of charge to the customer, both of which help generate sales."  (*Id.*)  Plaintiff uses "a portion of the stores' permissible business signage space to post Plaintiff's signs."  (*Id.* ¶ 13, 1 ER 21.)  "Plaintiff's signs typically contain an image [of the prize] as well as a placard encouraging the public to enter the premises and participate in the contest.  Once inside, the patron can enter the contest free of charge."  (*Id.*)  Plaintiff's contest materials are located inside the store.  (*Id.*)

Section 602.3 includes in its definition of a business sign messages related to "other activity . . . conducted on the premises upon which [the] sign is located." The FAC clearly alleges such an activity.

In its Answering Brief, the City admits that Plaintiff's signs are onsite signs and argues that they may be displayed as accessory messages on a business sign. As an example of Plaintiff's signs, the City shows a photo of the sign at Yick's Liquors. (AB 2.) The sign advertises a Batman X-Box game as the prize in an onsite contest. The City states that "Section 602.3 allows Yick's Liquors to promote Contest Promotions' sweepstakes for products 'related' to the Batman video game on one-third or 25 square feet of its business sign." (AB 30.) That the Batman X-Box message may appear on a business sign at all, of course, is because it is an onsite sign.

The City further concedes that under section 602.3, an independent travel agency may place an Alitalia message on the accessory part of the agency's business sign. (*Id.*) The City also admits that the Coca Cola and Kraft cheese logos Plaintiff uses in a hypothetical to show that section 602.3 fails constitutional scrutiny (OB 33-34) are allowed on the accessory portion of a business sign as "identify[ing] by brand name products sold on the premises." (AB 29.) The City's arguments prove Plaintiff's point that the Batman X-Box, Alitalia, Coke, and Kraft

messages are *onsite* messages. In prohibiting Plaintiff's signs, the City therefore is not using section 602.3 as a "ban on offsite commercial speech." (1 ER 5.)

**B.** **The Settlement Agreement Estops the City from Denying that Plaintiff's Signs Are Onsite Signs.**

The Settlement Agreement (3 SER 521-533) defines two types of Business Signs under the Code. A "Category A" sign is one that "directs attention to the businesses, commodities, services, industries or other activities which are sold, offered or conducted on the premises upon which the sign is located . . . ." (3 SER 522; AB 6 n. 3.) A "Category B" sign is one that directs attention to "businesses, commodities, services, industries or other activities for each of which one or more Related Prizes are offered in a Sweepstakes conducted on the premises." (*Id.*)

Paragraph 1 of the Settlement Agreement provides:

> 1. **Classification of Signs**
>
> The parties agree and acknowledge that Category A Signs and Category B Signs erected by Contest Promotions within the City ***are and shall be deemed Business Signs for all purposes of the Planning Code***, including but not limited to the filing, processing and approval of permits by and with the Planning Department, so long as they are consistent with the dimensional, location, and other requirements applicable to Business signs under Article 6 of the Planning Code. (Emphasis added.) (3 SER 526.)

The Settlement Agreement resolved the dispute over whether Plaintiff's signs were offsite "general business signs" or onsite "business signs." (FAC ¶ 20, 1 ER 22; ¶ 26, 1 ER 23.) The agreement "required" the City to "construe

plaintiff's signs as Business Signs, as the Planning Code defined them at the time."
(1 ER 5:1-2; *see* AB 6 n. 3 (showing section 602.3 at time of settlement).)  In
reliance on it, Plaintiff dismissed its first federal action with prejudice.  (3 SER
519, 529 ¶ 7.)  In its brief, the City affirms the parts of the agreement it views as
favorable to it.  (AB 6-7.)

The City is bound by the Settlement Agreement and is estopped to deny its
terms.  *See* Cal. Evid. Code § 622 ("The facts recited in a written instrument are
conclusively presumed to be true as between the parties thereto . . . ."); *Flex-Foot,
Inc. v. CRP, Inc.*, 238 F.3d 1362, 1367-68 (Fed. Cir. 2001) (a "dismissal with
prejudice and accompanying settlement agreement certainly gives rise to
contractual estoppel . . . .")  The Settlement Agreement thus estops the City from
denying that Plaintiff's signs are onsite signs.

## III.   SECTION 602.3 IS SUBJECT TO HEIGHTENED OR STRICT SCRUTINY.

### A.   On Its Face, Section 602.3 Restricts Speech Based on the Topic, Idea or Message Expressed.

An ordinance is content-based where "the very basis for the regulation is the
difference in content" between more restricted and less restricted speech.
*Discovery Network,* 507 U.S. at 429.  "Government regulation of speech is content
based if a law applies to particular speech because of the topic discussed or the
idea or message expressed."  *Reed*, 135 S. Ct. at 2227.  Heightened scrutiny does

not apply only to outright prohibitions of speech. "'Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.'" *Sorrell*, 564 U.S. at 566, citing *U.S. v. Playboy Entertainment Group, Inc*., 529 U.S. 803, 812 (2000).

By its terms, section 602.3 burdens messages permitted on a business sign because of their content. Section 602.3 in effect divides the sign into two parts, a primary area and an accessory area. The primary area occupies at least two-thirds of the sign. Section 602.3 limits the messages on the primary area to content that "directs attention to *the primary* business, commodity, service, industry or other activity which is sold, offered, or conducted on the premises . . . ." Messages that relate to *an* onsite activity, etc., but not "*the primary*" one, are prohibited on the primary part of the sign. Section 602.3 limits the accessory area to one-third of the sign and restricts messages in that area to a "brand name or symbol" advertising "businesses, commodities, services, industries or other activities" conducted onsite.

According to the City, section 602.3's restrictions are even narrower. Section 602.3 defines "the primary" business, etc., conducted on the premises as "the *use* that which occupies the greatest area on the premises . . . ." (Italics added.) The existence of a use that occupies the greatest area on the premises logically implies other uses that occupy less area. The criterion for display on the primary part of the sign thus is the use's area.

8

In its brief, the City for the first time claims that the term "use" in section 602.3 is defined by section 102 of the Code. For present purposes, Plaintiff will assume that is so. Section 102 defines "use" as: "*The* purpose for which land or a structure, or both, are legally designed, constructed, arranged, or intended, or for which they are legally occupied or maintained, let or leased." (Italics added.)

Under this definition, says the City, section 102 permits only messages that relate to the whole business. (AB 23-24, 29-30.) Thus the operator of Jim's Grocery Store may "hang a business sign to identify 'Jim's Grocery Store' at the premises." (AB 24.) But a message advertising only part of the business, such as the brand name of a product sold in the store, may appear only on the accessory part of the sign. To appear on a business sign at all, however, the brand name must be an onsite message. By thus restricting some onsite messages more than others, section 602.3, with or without section 102, regulates content and *onsite* content in particular.

## B.   The Onsite-Offsite Distinction is Content-Based.

As noted above, the City's main argument is that under *Metromedia*, 453 U.S. at 511-513, *Metro Lights L.L.C. v. City of Los Angeles*, 551 F.3d 898, 903 (9th Cir. 2009) and other cases (AB 11-17), a law that distinguishes between onsite and offsite commercial advertising is content-neutral (AB 20) and subject only to

deferential *Central Hudson* review. After *Sorrell* and *Reed*, however, that is no

longer the law.

All of the cases the City cites in support of its deferential-review argument

predate *Sorrell*. (*See* AB at 11-17.) *Sorrell* holds that content-based restrictions on

commercial speech receive heightened scrutiny. *Id*. 564 U.S. at 565. Common

sense shows that the distinction is content-based. The only difference between

onsite messages ("Joe's Pizza") and offsite messages ("Gas One Mile Ahead") is

their content.

In *Metromedia*, the plurality found the onsite-offsite distinction content-

based. The ordinance at issue in *Metromedia* "essentially banned *all* offsite

billboards." *Discovery Network,* 507 U.S. at 425 n. 20 (original italics). The core

of the ordinance thus was the distinction between onsite and offsite commercial

signs. *See id*., 453 U.S. at 523 (Brennan, J., concurring) (noting that the onsite

exception was the "largest" exception to the offsite ban). The four-justice plurality

rejected San Diego's argument that the ordinance was a content-neutral time, place

and manner restriction:

> It is apparent . . . that the ordinance distinguishes in several ways
> between permissible and impermissible signs at a particular location by
> reference to their *content*. Whether or not these distinctions are
> themselves constitutional, they take the regulation out of the domain of
> time, place, and manner restrictions. (Id. at 516-517 [italics added].)

In disagreeing with Judge Rehnquist's dissent, the plurality reasoned that the ordinance violated the "general rule" that a law "cannot favor certain communicative contents over others." (*Id*. at 519.) The ordinance was not content-neutral because it "favor[ed] certain kinds of messages – such as *onsite commercial advertising* and temporary political campaign advertisements – over others." *Id*. (italics added). What the ordinance favored onsite commercial advertising over was of course offsite commercial advertising. *Id*. at 512.

The two-justice concurrence, written by Justice Brennan, reasoned that under the "onsite premises exception," "the *content* of the sign depends strictly on the identity of the owner or occupant of the premises . . . . " *Id.* at 535 (italics added). Six justices who concurred in the judgment therefore agreed that the onsite-offsite distinction was content-based. Their conclusion therefore is a holding of the Court. *See Marks v. U.S.*, 430 U.S. 188, 193 (1977). *See also Thomas v. Schroer*, 116 F. Supp. 3d 869, 876 (W.D. Tenn. 2015) (holding onsite-offsite distinction content-based).

Prior to *Sorrell*, this aspect of *Metromedia* made no difference in the Ninth Circuit because the Court applied *Central Hudson* to commercial speech regulations whether or not they were content-based. *RDN*, 810 F.3d at 647-648 (9th Cir. 2016). As authority for this proposition, *RDN* cited *Coyote Publishing, Inc. v. Miller*, 598 F.3d 592, 599 n. 10 (9th Cir. 2010), which in turn cited *Metro*

11

*Lights*, 551 F.3d at 903 n. 6. The *Metro Lights* Court stated, "whether or not the City's regulation is content-based, the *Central Hudson* test still applies because of the reduced protection given to commercial speech." *Id*.

That is no longer the law. "In *Sorrell* . . . the Supreme Court held that content- or speaker-based restrictions on non-misleading commercial speech regarding lawful goods or services must survive 'heightened judicial scrutiny.'" *RDN*, 810 F. 3d at 648. Under *Sorrell* and *RDN*, heightened scrutiny therefore is the test even if the Court holds that Plaintiff's signs are offsite signs.

*Reed* raises a question about whether the onsite-offsite distinction is content-based. In *Reed*, the six-justice majority held that a regulation that "applies to particular speech because of the topic discussed or the idea or message expressed" is content-based. *Id*. 135 S.Ct. at 2227. By its terms, this definition includes the onsite-offsite distinction because the distinction between onsite and offsite signs is the topic, idea or message expressed. The majority opinion did not carve out an exception for the onsite-offsite distinction.

But three of the six justices who joined in the majority opinion also joined in a concurrence written by Justice Alito, which stated without analysis that the onsite-offsite distinction is content-neutral. *Id*. at 2233. Three other justices, in an opinion written by Justice Kagan, concurred only in the judgment. Justice Kagan

12

argued against the majority's approach of subjecting all content-based restrictions to strict scrutiny. *Id*. at 2237-2239.

The Kagan concurrence did not narrow the majority opinion because those three votes were not necessary to the majority. The votes of the Alito concurrence, however, were necessary. But the justices who joined the Alito concurrence did not merely concur in the judgment, as did the Kagan concurrence. They joined in the majority *opinion.*

In such a case, the D.C. Circuit holds that the majority opinion "is not a plurality opinion of four justices joined by a separate [justice] to create a majority, it is the opinion of the majority of the Court. As such it is authoritative precedent. It says what it says." *In re Grand Jury Subpoena*, 438 F.3d 1141, 1148 (D.C. Cir. 2006). The Seventh Circuit agrees. *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204*, 523 F.3d 668, 673 (7th Cir. 2008) (Posner, J.) ("But [the concurring justices] joined the majority opinion, not just the decision, and by doing so they made it a majority opinion and not merely . . . a plurality opinion.") *See also Thomas v. Schroer,* 127 F. Supp. 3d 864, 873 (W.D. Tenn. 2015) (holding Alito concurrence neither binding nor persuasive).

Other circuits disagree. *See B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 310, 313 n. 17, 328 n. 1, 329 (3d Cir. 2013) (en banc) (majority disagreeing and dissent agreeing with *Nuxoll*). The Supreme Court authority on

the issue amounts to a disagreement between a concurrence and a dissent. *McKoy v. North Carolina*, 494 U.S. 433 (1990) at 448 n. 3 (Blackmun, J., concurring) (concurrence does not narrow majority opinion), 462 n. 3 (Scalia, J., Rehnquist, C.J., and O'Connor, J., dissenting) (concurrence narrows).

The D.C. and Seventh Circuits' position is better-reasoned. It treats a majority opinion as authoritative. It avoids complicating the majority opinion by injecting the concurrence. The Third Circuit position demotes a majority opinion to a non-binding plurality. The rationale for narrowing by concurrence is that "no single rationale explaining the result enjoys the assent of five Justices." *Marks*, 430 U.S. at 193. That rationale does not apply where the Court issues a majority opinion.

The Ninth Circuit aligns with the D.C. and Seventh Circuits. *See In re Grand Jury Proceedings,* 5 F.3d 397, 400 (9th Cir. 1993) (refusing to narrow majority opinion, noting that concurring fifth justice signed majority opinion); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1034 (9th Cir. 2009) (rejecting concurrence rationale; noting that concurrence was expansive and opinion was a majority opinion, not a plurality). The Alito concurrence thus does not narrow the *Reed* majority opinion. Under that opinion, the distinction between onsite and offsite commercial messages is content-based.

The City argues that *Reed* supports its position, not Plaintiff's, because "six justices expressly rejected the notion that strict scrutiny should apply to onsite/offsite distinctions." (AB 18.) Those six justices, however, did not speak as a Court majority. The majority opinion is the *only* authoritative opinion in *Reed*. It carves out no exception for the onsite-offsite distinction. That the Alito concurrence did so only underscores that the majority did not recognize any such exception. Whether a sign is onsite or offsite, moreover, is purely a matter of what it says, *i.e.* its "communicative content." *Reed*, 135 S.Ct. at 2227. The distinction therefore is content-based.

### C.    Section 602.3 is Outside the Scope of *Central Hudson*.

In *Metromedia*, the plurality reasoned that *Central Hudson* applied to the city's ban on offsite signs because of the "lesser protection" commercial speech receives under the First Amendment. *Id*. 453 U.S. at 507 ("lesser protection"), 511-512, 513 ("greater degree of protection" for noncommercial speech). The City (AB 12) and the district court (1 ER 59-60) both assume that *Central Hudson* applies to all commercial speech restrictions.

The scope of *Central Hudson* is actually much narrower. In *Discovery Network*, the Court suggested that commercial speech receives lesser protection only where a law is "aimed at the content of the speech or the particular adverse effects of that content . . . ." (*Id*. at 416 n. 11.) Outside that context, "it would

seem to follow" that the "standards applicable to . . . fully protected speech" should apply to commercial speech. (*Id.*) The Court later noted that the city did not "assert[] an interest in preventing commercial harms by regulating the information distributed by respondent publishers' newsracks, which is, of course, the typical reason why commercial speech can be subject to greater governmental regulation than noncommercial speech." (*Id.* at 426.)

In *Sorrell*, the Court called *Central Hudson* a "special commercial speech inquiry" (*id.* 564 U.S. at 571) and added, citing *Discovery Network*:

> . . . . [T]he government's legitimate interest in protecting consumers from "commercial harms" explains "why commercial speech can be subject to greater governmental regulation than noncommercial speech." *Discovery Network*, 507 U.S. at 426; *see also* [*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 502 (1996)]. The Court has noted, for example, that "a State may choose to regulate price advertising in one industry but not in others, because the risk of fraud ... is in its view greater there." *Id.* at 579.

Under *Discovery Network* and *Sorrell*, *Central Hudson*'s "special commercial speech inquiry" does not apply where government restricts commercial speech for reasons unrelated to preventing commercial harms. Here, the City regulates commercial speech on business signs to promote safety and aesthetics. (AB 1.) Section 602.3 has nothing to do with preventing fraud or any other commercial harms and therefore is outside the scope of *Central Hudson*.

16

### D.   The Applicable Test Is Strict Scrutiny.

Because it is both content-based and outside the scope of *Central Hudson*, section 602.3 is subject to a form of heightened scrutiny.  The question is which form.  Under *Sorrell*, a content-based restriction on commercial speech is subject to heightened scrutiny.  *RDN*, 810 F.3d at 648, *citing Sorrell*, 564 U.S. at 565.  The City argues that *Sorrell* is inapplicable because section 602.3 purportedly is content-neutral.  (AB 20.)  But as shown above, it is content-based, both because it burdens different commercial messages differently and because it distinguishes between onsite and offsite commercial speech.  At a minimum, section 602.3 is subject to the heightened scrutiny test described in *RDN*.  *Id*. 810 F.3d at 648-649, 651-653.

Under *Reed*, the test applicable to a content-based speech restriction is strict scrutiny.  *Id*. 135 S.Ct. at 2226-2227.  The City argues (AB 18-19) and the district court ruled (1 ER 7-9) that *Reed* does not apply to commercial speech.  (AB 18-19.)  In evaluating this argument, the Court should consider three aspects of *Reed*: (1) its *definition* of content-based speech regulation, *id*. at 2227; (2) its *method* of determining whether a restriction is content-based from the face of the statute and rejection of the "content neutral purpose" test, *id*. at 2228-2229; and (3) its rule of *strict scrutiny*, 2226-2227.

17

*Reed* defines a content-based speech regulation as a regulation that "applies because of the topic discussed or the idea or message expressed." *Id*. 135 S.Ct. at 2227. The first case the Court cited as authority for this definition was *Sorrell*, a commercial speech case. *Reed*, *id*. By citing *Sorrell*, the Court held that the same definition of content-based applies to both commercial and noncommercial speech. It makes no sense, moreover, to define content-based differently depending on whether a message is commercial or noncommercial. Where the applicability of a restriction is based on what the sign says, it is content-based whether the message is commercial or noncommercial.

In holding that a court must determine whether a statute is content-based from the face of the statute, *Reed* again cited *Sorrell*. *Reed*, 135 S.Ct. at 2227, 2228. In holding that where a statute is content-based on its face, it is subject to strict scrutiny and any content-neutral governmental purpose is irrelevant, the Court cited *Discovery Network*, another commercial speech case. *Reed*, 135 S.Ct. 2228. Again, by relying on commercial speech cases the Court held that the above rules apply to commercial as well as noncommercial speech.

That leaves only *Reed*'s rule of strict scrutiny. Significantly, *none* of the cases the City cites (AB 19) addresses *Reed*'s reliance on *Sorrell* and *Discovery Network*. The City's cases reason that *Reed* dealt with noncommercial speech and did not expressly overrule *Central Hudson* or *Metromedia*. *See, e.g., Lamar*

*Central Outdoor, LLC v. City of Los Angeles*, 245 Cal.App.4th 610, 625 (2016);

*California Outdoor Equity Partners v. City of Corona*, 2015 WL 4163346 at *10

(C.D. Cal. 2015). This superficial analysis is not persuasive because it does not

address how the *Reed* majority reached its decision. The majority did so by relying

on commercial speech cases. *Reed* therefore applies to commercial speech.

Amicus Public Citizen, Inc. addresses *Reed*'s reliance on *Sorrell* and

*Discovery Network*, but its analysis is mistaken. Amicus argues (Br. 9-10) that

*Sorrell* is not a commercial speech case. Amicus ignores *Sorrell*'s repeated

references to commercial speech. *E.g. id*. at 565-566, 571. It also ignores *RDN*,

which it says was wrongly decided, where this Court held that *Sorrell* involved a

content-based restriction on commercial speech. *See id*. 810 F.3d at 648.

Amicus also argues that *Discovery Network* does not support application of

strict scrutiny to a content-based commercial speech restriction. (Br. 10-12.)

Amicus tries to separate *Discovery Network*'s discussion of whether the ordinance

withstood *Central Hudson* scrutiny (507 U.S. at 424-426) from its discussion of

content-based regulation (*id*. at 429). This argument misses the point. *Reed* cited

*Discovery Network* as authority that a law that is "content based on its face is

subject to *strict scrutin*y regardless of the government's benign motive, content-

neutral justification, or lack of 'animus toward the ideas contained' in the regulated

speech." *Reed*, 135 S.Ct. at 2228 (italics added). This citation is itself Supreme

Court authority that *Discovery Network* supports application of strict scrutiny to content-based restrictions on commercial speech.

The only federal appellate case the City cites in support of its argument that *Reed* does not apply to commercial speech is *Dana's R.R. Supply v. Attorney General of Florida*, 807 F.3d 1235 (11th Cir. 2015), which did not actually hold which level of heightened scrutiny applies to content-based restrictions on commercial speech. The court applied *Reed*'s *definition* of content-based. *Id*. at 1246. After recognizing that heightened scrutiny was appropriate, the court applied intermediate scrutiny because the statute failed even that test. *Id*.

Two recent Court of Appeals decisions apply *Reed* and strict scrutiny to commercial speech. In *Left Field Media LLC v. City of Chicago*, ___ F.3d ___, 2016 WL 2956879 (7th Cir. May 23, 2016) the court applied *Reed* to Chicago's peddler's-license ordinance. The ordinance required "anyone selling anything" on the city's streets to have a peddler's license, except those selling newspapers. *Id*. at *3. Left Field, the publisher of a baseball magazine, challenged the newspaper exception under the First Amendment. *Id*.

Left Field sought a preliminary injunction, which was denied. In an opinion by Judge Frank Easterbrook, the Seventh Circuit affirmed. In providing guidance for further proceedings, however, the court found serious constitutional issues. The court specifically addressed *Reed* (which it referred to as *Gilbert*). Although

the court had previously upheld the newspaper exemption, Judge Easterbrook

reasoned that *Reed* changed the law:

> After [*Reed*], "[a]ny law distinguishing one kind of speech
> from another by reference to its meaning now requires a
> compelling justification." *Norton v. Springfield*, 806 F.3d
> 411, 412 (7th Cir. 2015). The Court in *Gilbert* wrote that
> "regulation of speech is content based if a law applies to
> particular speech because of the topic discussed or the idea
> *or* message expressed." 135 S.Ct. at 2227 (emphasis
> added). So a law that distinguishes discussion of baseball
> from discussion of politics, by classifying one kind of
> publication as a magazine and another as a newspaper, is
> at risk under the approach of *Gilbert*. *Id*. at *3.

In *Free Speech Coalition, Inc. v. Attorney General*, ___ F.3d ___, 2016 WL

3191474 (3rd Cir. 2016) ("*FSC*"), the court applied *Reed* to statutes that required

producers of visual depictions of sexually explicit conduct to maintain records

showing that the participants in such conduct were adults. Before *Reed* was

decided, the court upheld the statutes under intermediate scrutiny. *Id*. at *4. After

*Reed*, the court granted rehearing. *Id*. at *5. The court held that the statutes were

content-based because on their face they applied only to "visual depictions" of

actual or simulated "sexually explicit conduct." *Id*. at *6.

"Thus, under *Reed*," said the court, "strict scrutiny applies because the

Statutes' restrictions 'depend entirely on the communicative content' of the

speech." *Id*. The Court further reasoned: "Our sister circuits have also noted that

*Reed* represents a drastic change in First Amendment jurisprudence." *Id*. at *6 n.

21

7.  The court remanded to permit the district court to make a record under strict scrutiny.

Significantly, the panel majority in *FSC* did not distinguish between depictions that were commercial, such as trailers or other advertisements, and noncommercial depictions, such as the films themselves.  Had it viewed *Reed* as applicable only to noncommercial speech, the court would have drawn that distinction and confined its *Reed* analysis to the noncommercial depictions.  *Left Field* and *FSC* thus show that *Reed* applies to content-based restrictions on commercial speech.

A member of the panel dissented on the grounds that the record-keeping statutes addressed secondary effects of pornography and therefore should not be subjected to strict scrutiny.  The dissent also cited three of the commercial-speech cases the City relies on here.  *Id*. n. 7.

In *RDN*, the Court reasoned that the test for content-based regulations of commercial speech is heightened, not strict, scrutiny.  *Id*. 810 F.3d at 648 and n. 3.  But the Court did not consider the effect of *Reed*, including whether it defined the "heightened scrutiny" *Sorrell* left undefined.  *Reed*'s reliance on *Sorrell* and *Discovery Network*, both commercial speech cases, shows that strict scrutiny applies to content-based restrictions on commercial speech.  Therefore, while the

22

constitutional standard is at least *RDN*'s heightened scrutiny, in light of *Reed*, *Left Field*, and *FSC*, the Court should apply strict scrutiny.

## IV.    SECTION 602.3 FAILS INTERMEDIATE OR ANY FORM OF HEIGHTENED SCRUTINY.

In its Opening Brief, Plaintiff shows that the messages section 602.3 prefers, *i.e* those that direct attention to the "use which occupies the greatest area on the premises," are no safer or more aesthetically pleasing than other messages.  (OB 33-35.)  Section 602.3 therefore fails prongs (3) and (4) of *Central Hudson*, *RDN*'s heightened scrutiny test and *a fortiori* fails strict scrutiny.  Plaintiff illustrates its point with a hypothetical involving two commodities sold at a grocery store, Coca Cola, and Kraft cheese.  Plaintiff shows that the area each commodity occupies on the premises is completely irrelevant to safety and aesthetics.  (OB 33-35.)

The City does not even try to defend the "greatest area" criterion.  Instead, it makes a new argument for the first time on appeal.  It argues that section 102 of the Code defines the term "use."  Section 102 defines "use" as "[t]he purpose for which land or a structure, or both," are leased or occupied.  That purpose, says the City, is not to sell individual commodities like Coke or Kraft cheese, but to operate a whole enterprise, such as Jim's Grocery Store.  Therefore, the messages permitted on the primary part of the sign are not Coke or Kraft, but a version of "Jim's Grocery Store," adorned perhaps by generic descriptions of "fresh produce" and "cold drinks."  (AB 24.)

23

Contrary to the City's argument, even if section 102 applies and means exactly what the City claims, it makes no difference. The constitutional defect in the "greatest area" rule is that area is irrelevant to safety and aesthetics. (OB 33-34.) The same is true of "Jim's Grocery Store." That message is no different in terms of safety and aesthetics from Coca Cola, Kraft or any other message.

The City bears the burden of showing that limiting the primary portion of the sign to a "Jim's Grocery Store" "will in fact alleviate [real harms] to a material degree." *RDN*, 810 F.3d at 648. The City must also show that the limitation "is drawn to achieve the government's substantial interest." *Id*. (brackets omitted.) The City makes no effort to meet this burden. It could not possibly do so.

For the same reason, the outcome would be the same under *Central Hudson*'s requirements that a restriction "directly advance[]" a substantial governmental interest and be "not more extensive than . . . necessary" to do so. *Id*. 447 U.S. at 566. A message like "Jim's Grocery Store" does not advance safety and aesthetics any more than any other message. The loss in speech in return for no gain in safety or aesthetics shows that the restriction is far more extensive than necessary. Section 602.3's "primary use" restriction therefore fails heightened or intermediate scrutiny. Nor does the City even begin to suggest that section 102's "whole enterprise" restriction satisfies strict scrutiny. *Reed*, 135 S.Ct. at 2231-2232. For this reason alone, the judgment below should be reversed.

24

## V.   SECTION 602.3 IS VOID FOR VAGUENESS.

### A.   Plaintiff Has Standing to Assert Vagueness.

The City argues that Plaintiff lacks standing to challenge section 602.3 on vagueness grounds.  (AB 25-26.)  It argues that Plaintiff's signs advertise "off-premises items" and thus cannot possibly be the use that occupies the greatest area on the premises, regardless of how clear or vague "greatest area" is.

Plaintiff alleges, however, that its contest materials are located *inside* the stores.  (FAC ¶ 13, 1 ER 20-21.)  It is quite possible that Plaintiff's in-store contest and materials (such as a point-of-sale sign with contest materials) are the "activity" that occupies the greatest area of the various activities conducted on the premises.

Moreover, "the vaguer an ordinance is, the less likely it will be found to 'clearly proscribe' conduct."  *Hunt v. City of Los Angeles*, 638 F.3d 703, 711 (9th Cir. 2011).  One can only determine whether Plaintiff's signs are permitted by applying the vague criteria of activity, area, premises, and use to individual locations.  As Plaintiff has shown, area, premises, and use are so vague that one cannot tell which signs are permitted.  (OB 38-45.)  On this record, one cannot say – especially on a motion to dismiss – that section 602.3 clearly proscribes Plaintiff's signs.  Plaintiff therefore has standing to assert a vagueness challenge.

25

**B.** **Section 102's Definition of "Use" Does Not Cure the Vagueness of Section 602.3.**

The City argues that section 102's definition of "use" cures any vagueness in section 602.3. The City claims that section 102 defines "use" in terms of an entire convenience store, grocery store, or similar enterprise. (AB 27.) Thus at Jim's Grocery Store, the "use" Jim can advertise on the primary portion of his business sign is some variation of the whole store. This limitation, says the City, provides the requisite clarity.

Section 102's "the purpose for which land or a structure or both are legally designed, constructed, arranged, or intended, or for which they are legally occupied" is just as vague as section 602.3's "area," "premises," and "use." The purpose, says the City, is to operate the store, not to sell individual products. But of course operating the store *is* selling individual commodities and conducting a variety of other activities. Whether a given message relates to the "purpose" can be argued both ways in virtually every case. One could argue that a message, *e.g.* Coke, Bud, "fresh produce" or "cold drinks," "directs attention to the primary business" or that it does not. Section 102 leaves "primary business" as vague as ever.

In any event, Section 102 does not apply here. First, the City raises section 102 for the first time on appeal. Plaintiff argued below that the term "use" in section 602.3 was impermissibly vague. (*See* 1 ER 64:26-65:10; ECF No. 17 at

26

10:25-11:12.)  In response, the City said nothing about section 102.  Raising

section 102 for the first time on appeal deprives Plaintiff of the opportunity to

develop a record of its legislative history and application in other cases.  Where a

record could have been developed below, the Court has prohibited appellees from

raising new arguments on appeal.  *See Duffy v. Riveland*, 98 F.3d 447, 455 (9th

Cir. 1996); *Gieg v. DDR, Inc*., 407 F.3d 1038, 1046 n. 10 (9th Cir. 2005).

Second, section 102's definition of "use" is incompatible with the language

of section 602.3.  Section 602.3 defines a permissible primary message as one that

"directs attention to the primary business, commodity, service, industry or other

activity . . . sold, offered, or conducted" on the premises.  As the City interprets it,

section 102 eliminates these alternatives in favor of a single "purpose," which

means the whole enterprise.  If the City's interpretation is right, "business,

commodity, service, industry or other activity" are simply irrelevant.

Further, section 602.3's phrase "use that occupies the greatest area on the

premises" logically implies other uses than occupy less area.  This language

directly conflicts with the City's interpretation of section 102 as defining a single

use, such as Jim's Grocery Store.  (AB 24.)  The inapplicability of section 102

returns the analysis to "area," "premises," and "use," which Plaintiff has shown to

be impossibly vague.  (OB 38-45.)

## VI.    SECTION 602.3 VIOLATES EQUAL PROTECTION.

### A.    Section 602.3 Is Subject to Strict Scrutiny Because It Implicates Free Speech.

The City argues that the applicable equal protection test is rational basis because Plaintiff purportedly fails to state a First Amendment claim.  (AB 28.)  As shown above, however, Plaintiff states a valid First Amendment claim.  In prohibiting Plaintiff's signs, the City implicates free speech, which triggers strict scrutiny.  *Denney v. DEA*, 508 F.Supp.2d 815, 836 (E.D. Cal. 2007).  (OB 45, 49.) The City cannot and does not argue that section 602.3 satisfies strict scrutiny. Plaintiff therefore states a valid equal protection claim.  *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

### B.    Plaintiff Has Not Waived Its Class of One Argument.

Plaintiff argues (OB 47) that even under rational-basis review, it states an equal protection claim because the City singled Plaintiff out by refusing to issue permits to Plaintiff while doing so for other similarly situated applicants.  The City says Plaintiff waived this claim on appeal by purportedly not explaining in its brief why the district court erred in rejecting Plaintiff's claim.  (AB 31.)  This is nonsense.

In its brief, Plaintiff summarizes its allegations of discriminatory treatment. (OB 47.)  It shows that the trial court rejected Plaintiff's claim on the grounds that Plaintiff's signs were offsite signs.  (OB 48; 1 ER 14.)  Plaintiff then explains that

its signs are onsite signs because they advertise an onsite activity. (OB 49.)

Plaintiff further argues that if doubt exists as to whether Plaintiff's signs are onsite

or offsite the rule of lenity requires the Court to interpret Plaintiff's signs as onsite.

(OB 50.) Far from waiving anything, Plaintiff argued in its brief that it was

"intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment." *Village of Willowbrook v. Olech,*

528 U.S. 562, 564 (2000).

## VII.    PLAINTIFF ALLEGES A VIOLATION OF SUBSTANTIVE DUE PROCESS.

The City argues that Plaintiff's claim for violation of substantive due process

purportedly falls with its First Amendment and equal protection claims. (AB 32.)

Those claims, however, are valid as shown above. The City argues that the

substantive due process claim is duplicative of Plaintiff's First Amendment and

equal protection claims. The emphasis of those claims, however, is different.

Standards much stricter than rationality are applicable to Plaintiff's First

Amendment claim. The emphasis of the equal protection claim is discriminatory

treatment of Plaintiff as compared to other similarly situated parties. The focus of

Plaintiff's substantive due process is arbitrary government action, regardless of

how others were treated.

## VIII. <u>CONCLUSION</u>.

The Court should reverse the judgment below and remand for further

proceedings consistent with this Court's opinion.

Dated: June 15, 2016                    *s/ Michael F. Wright*
                                        Michael F. Wright
                                        Attorney for Plaintiff-Appellant
                                        Contest Promotions, LLC

# CERTIFICATE OF COMPLIANCE
# WITH TYPE VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that:

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 6,824 words, as determined by the word count function of Microsoft Word 2016, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyles requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.


Dated:  June 14, 2016                         _s/ Michael F. Wright_____
                                              Michael F. Wright
                                              Attorney for Plaintiff-Appellant
                                              Contest Promotions, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the **APPELLANT'S REPLY BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on June 15, 2016.

I served true copies of the Appellant's Reply Brief on the interested parties in this action as follows:

| | |
|---|---|
| James M. Emery, Esq. | ***Attorneys for Defendant-Appellee,*** |
| Victoria Wong, Esq. | ***CITY AND COUNTY OF SAN FRANCISCO*** |
| Office of the City Attorney | |
| City Hall Room 234 | |
| 1 Drive Carlton B Goodlett Place | |
| San Francisco, CA 94102 | |
| (415) 554-4628 | |
| Jim.emery@sfgov.org | |
| Victoria.wong@sfgov.org | |

☒ **BY CM/ECF SYSTEM**

☒ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) in PDF format to be sent from e-mail address asknotkk@gmail.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **BY FEDERAL EXPRESS:** I enclosed said document in an envelope or package provided by Federal Express and addressed to the persons at the address listed in the Service List. I placed the envelope or package for collection and next business day delivery at an office or a regularly utilized drop box of Federal Express or delivered such document to a courier or driver authorized by Federal Express to receive documents. I also served Appellant's Reply Brief on Amicus Curiae Public Citizen, Inc. by Federal Express as follows:

Scott L. Nelson
Julie A. Murray
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009

**STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on June 15, 2016, at Los Angeles, California.

*s/ Kimmy Kim*
KIMMY KIM
